UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDINO VASQUEZ GASPAR,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary, Department of Homeland Security, et al,<br><br>Defendants. | Case No.: 3:23-cv-1145-W-KSC<br><br>**ORDER DENYING IN PART AND GRANTING IN PART MOTION TO DISMISS AND GRANTING LEAVE TO AMEND COMPLAINT AS TO FIRST CAUSE OF ACTION [Doc. 4]** |

Pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction or failure to state a claim. (Doc. 4.) On September 7, 2023, Plaintiff opposed the motion. (Doc. 5.) On October 6, 2023, Defendants replied in support. (Doc. 6.) The Court decides the matter on the papers submitted and without oral argument. *See* Civ.L.R. 7.1(d.1). For the following reasons, the Court DENIES the motion to dismiss for lack of subject matter jurisdiction, GRANTS the motion to dismiss for failure to state a claim, and GRANTS Plaintiff leave to amend his first cause of action, arising under the Administrative Procedure Act [Doc. 4].

//
//
//

## I. BACKGROUND

The Deferred Action for Childhood Arrivals program, 87 Fed. Reg. 53152, 53153 (Aug. 30, 2022) ("DACA") is administered by the U.S. Department of Homeland Security ("DHS") through its component agency U.S. Citizenship and Immigration Services ("USCIS"). *See* 8 C.F.R. §§ 236.21–236.25. "Deferred action is an exercise of the Secretary's broad authority to establish national immigration enforcement policies and priorities. . . . It is a form of enforcement discretion not to pursue the removal of certain aliens for a limited period in the interest of ordering enforcement priorities in light of limitations on available resources, taking into account humanitarian considerations and administrative convenience." 8 C.F.R. § 236.21(c)(1). "A grant of deferred action under this section does not preclude DHS from commencing removal proceedings at any time or prohibit DHS or any other Federal agency from initiating any criminal or other enforcement action at any time." *Id.*

Plaintiff seeks judicial review of the process by which Defendants denied renewal of his previously granted deferred action. Plaintiff prays that the denial of his renewal be reopened and that his deferred action status be reinstated pending re-adjudication of his renewal application. Plaintiff prays that the Court order Defendants to re-adjudicate the renewal application in compliance with Plaintiff's constitutional rights and Defendants' applicable policies and procedures. (*See* Doc. 1, *Complaint*, at 1, 31–32.)

Plaintiff is an undocumented immigrant, and citizen of Mexico, who was originally brought to the United States at 7 years of age. (*Id.* at 2.) In 2006, at the age of 10 years, Plaintiff was identified as having a "significant cognitive impairment" and was placed in an individual education program based on deficiencies in academics, speech, and behavioral and vocational aspects of life. (*Id.* at 2.) A 2013 psychological evaluation of Plaintiff indicated that he also struggled with behavioral, mood, and social aspects of life. (*Id.* at 3–4.) This same report assessed Plaintiff's age equivalencies across several skill sets: at a chronological age of 17 years, Plaintiff's socialization skills were at 7 years, 6 months for interpersonal assessment and 7 years, 7 months for play and leisure; his

expressive communication skills were at 10 years, 8 months; his receptive communication skills were at 7 years, 6 months; and his daily living skills were all under 10 years on multiple assessments. (*Id.* at 4.) The Complaint alleges Plaintiff continues to live with his parents. (*Id.*) Plaintiff is not currently able to live independently, but he hopes to achieve this goal. (*Id.* at 7.) The Complaint alleges that Plaintiff's current social abilities are substantially impaired, to an age below adulthood. "Bernardino is a young man who is mentally and emotionally functional at a level far below his chronological age. . . . Bernardino does not function as a normal 26-year-old man; he is mentally and emotionally functional more in the age range of 10 to 12 years old." (*Id.* at 27.)[1]

In 2012, at approximately 16 years old, Plaintiff was granted deferred action under the DACA program. (*Id.* at 4–5.) As a result of deferred action, Plaintiff was granted work authorization. (Doc. 1-2 (*Exhibits*) at Exh. 1.) The DACA program "allows certain unauthorized aliens who entered the United States as children to apply for a two-year forbearance of removal" and makes aliens who are granted that deferred action eligible "for work authorization and various federal benefits." *Dep't of Homeland Sec. v. Regents of Univ. of Cal.*, 140 S. Ct. 1891, 1901, 207 L. Ed. 2d 353 (2020); 8 C.F.R. § 236.21(c)(1)–(4).

"[D]eferred action . . . may be granted only if USCIS determines in its sole discretion that the requester meets each of the following *threshold* criteria *and* merits a favorable exercise of discretion: (1) [c]ame to the United States under the age of 16"; (2) has "[c]ontinuous residence in the United States from June 15, 2007, to the time of filing of the request"; (3) "he or she was physically present in the United States both on June 15, 2012, and the time of filing of the request"; (4) "[l]ack of lawful immigration

---

[1] With regard to Plaintiff's past social development, the Complaint alleged: "In the area of 'socialization skills' [Plaintiff at chronological age 17 years] was at age equivalent in 'interpersonal' at age 7 years, 6 months; 'play and leisure' at age 7 years, 7 months; and finally at 'coping' at age 10 years, 10 months." (*Compl.* at 4.)

status" at the time of filing and on June 15, 2012; (5) meets specified "[e]ducation or veteran status"; (6) "[t]he requester must not have been convicted" of specified criminal charges "or otherwise pose a threat to national security or public safety"; and (7) "[t]he requestor must have been born on or after June 16, 1981." 8 C.F.R. § 236.22(b) (emphasis added). "Even if the threshold criteria in paragraph (b) are all found to have been met, USCIS *retains the discretion* to assess the individual's circumstances and to determine that any factor specific to that individual makes deferred action inappropriate." *Id.* at § 236.22(c) (emphasis added).

When Plaintiff's deferred action ended, Plaintiff applied for subsequent renewals. (*See Compl.* at 6–7.) Through the renewal process, Plaintiff had deferred action status for 12 years. (*Id.*) In 2020, DHS granted one of Plaintiff's renewal requests for deferred action for the period June 30, 2020, to June 29, 2022. (*Id.*) During this time, Plaintiff also enjoyed government benefits arising from his deferred action status, including work authorization which was continued through this same period. (*Exhibits* at Exh. 1.)

On January 23, 2023, DHS issued Plaintiff a Notice of Intent to Deny ("NOID") his request for renewal of deferred action. (*Id.* at 7; *Exhibits* at Exh. 2.) The NOID based the intended denial on the facts that (1) Plaintiff appeared in an online video where Plaintiff was "attempting to meet a minor" at a grocery store, (2) Plaintiff admitted to talking to multiple minors online, and (3) the video, in which USCIS decided Plaintiff appeared, "was posted by a YouTube account called 'CC Unit,' whose operators pose as minors online and confront those individuals who solicit them in a manner similar to police sting operations."[2] (*Exhibits* at Exh. 2.)

---

[2] Under Fed. R. Evid. 201(c)(1), the Court takes judicial notice that within the Southern District of California, where Plaintiff resides, the "Creep Catching Unit" or "CC Unit" operated as "a small group of 20 somethings on their own who hope to expose adults preying on children," as of November 2019. (Danny Freeman, "San Diego 'Creep Catching Unit' Takes Up Fight Against Online Predators" (Nov. 16, 2019), available at, https://www.nbcsandiego.com/news/local/san-diego-creep-catcher-unit-takes-up-fight-against-onling-predators/2161596 (last visited on Nov. 27, 2023)). The Court makes no finding regarding this group's relevance to this case.

The NOID further explained the agency's reliance on those facts in reaching its intended denial decision. Although the "conduct did not result in criminal charges, it nonetheless is a significant negative discretionary factor," that Plaintiff's "willingness to entice children to attempt to meet them for [the] apparent purpose of engaging in sexual acts suggests you may pose a threat to public safety," and that Plaintiff did not appear to warrant a favorable exercise of USCIS's discretion. (*Id.*) The NOID provided Plaintiff an opportunity to submit additional information to overcome the stated grounds for the agency's intended denial. (*Id.*) Plaintiff submitted additional information through counsel, attempting to overcome USCIS's stated grounds for intended denial. (*Compl.* at 8.) On March 15, 2023, DHS denied Plaintiff's DACA renewal on grounds that he did not establish that he warranted "a favorable exercise of discretion." (*Id.*)

In his Complaint, Plaintiff alleges that Defendants unlawfully stripped him of his deferred action status on an arbitrary and unfounded basis outside the scope of the DACA program. (*Compl.* at 2.) Plaintiff also alleges that the nonrenewal violated DACA's enumerated eligibility criteria, contrary to the Administration Procedure Act ("APA"), 5 U.S.C. §§ 553, 706, and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (*Compl.* at 8–9.) The Complaint alleges that the APA permits judicial

---

The Court also takes judicial notice of the fact that at least one cooperative of local and federal law enforcement previously made public its opposition to this type of civilian undercover operation. "The [San Diego Internet Crimes Against Children Task Force] does not condone the use of civilians to conduct undercover investigations. . . . The Task Force vigorously investigates and prosecutes crimes against children with our partners at the San Diego District Attorney's office and the United States Attorney's office." (*Id.*) The San Diego County District Attorney's office "made clear its stance on groups like CC Unit. 'San Diego is one of the safest urban counties in American and that is in large part due to the outstanding law enforcement in this region. We need to let them do their job with the trust and partnership of the community.'" (*Id.* (quoting a statement from the San Diego County District Attorney's Office).)

In light of these public instructions, the possibility that a federal law enforcement agency would base its administrative decision on this source might be concerning. If so, it might be more concerning that an agency would rely on this source for its exercise of prosecutorial discretion and then defend in federal court that basis for prosecutorial discretion after having cautioned the public to the contrary.

review of the federal agency's discretionary DACA decision-making because the stated grounds for nonrenewal—that is, Plaintiff failed to show that he does not pose a threat to public safety—was an arbitrary and capricious conclusion.  Plaintiff challenges the NOID, alleging a lack of substantiation of the group who posted the online video, a lack of Plaintiff's consent to be video-graphed or to have the resulting video published, a lack of evidence that Plaintiff "knew he was soliciting a minor, went to meet a minor, or had any knowledge that a minor was involved." (*Id.* at 25.)  Plaintiff also alleges that his cognitive deficits, resulting in his mental function at the age range of a 10- to 12-year-old, support that "he would, like so many young people, use an online site to hopefully meet a friend," and do not support a conclusion that he failed to demonstrate he is not a threat to public safety. (*Id.* at 27.)  At its core, the Complaint challenges the sufficiency or veracity of the video evidence Defendants considered in evaluating whether Plaintiff met his burden to demonstrate that he is not a threat to public safety in light of Plaintiff's impaired development. (*Id.* at 26–31.)

        Defendants' Rule 12(b) motion characterized the Complaint as a challenge solely to the final discretionary agency decision to deny deferred action.  Plaintiff argued, in his opposition to the motion to dismiss, that his causes of action pierce through the discretionary final agency decision and challenge instead the non-discretionary procedure by which Defendants reached the NOID and the ultimate discretionary decision to deny renewal.

## II. SUBJECT MATTER JURISDICTION

        Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal based on a lack of subject matter jurisdiction.  When a court lacks subject matter jurisdiction, it lacks the power to proceed, and its only remaining function is to dismiss. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  Once the moving party challenges jurisdiction, the burden is on the party asserting jurisdiction to prove otherwise.  *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994).  "A

jurisdictional challenge under Rule 12(b)(1) may be made on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  Here, the only extrinsic evidence are Exhibits, attached to Plaintiff's Complaint.

The federal district courts have "original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  Plaintiff's Complaint alleges two causes of action, the first arising under the federal Administrative Procedure Act ("APA"), 5 U.S.C. §§ 553, 706, and the second alleging violations of Plaintiff's rights grounded in the due process clause of the Fifth Amendment to the U.S. Constitution.  Both causes of action arise under federal law.

Defendants, however, argue that two federal statutes strip the Court of jurisdiction to review Plaintiff's complaint—section 1252(g) of Title 8 of the United States Code (governing immigration) and section 701(a) of Title 5 of the United States Code (governing APA claims).  The applicability of both jurisdiction-stripping provisions depends upon the resolution of whether Plaintiff's Complaint challenged (1) a discretionary agency decision or (2) the non-discretionary agency proceedings or non-discretionary conduct leading to a final discretionary decision.  If the former, then the Court lacks subject matter jurisdiction in this case; if the latter, then judicial review of Plaintiff's Complaint is proper.  *See* 5 U.S.C. § 701; 8 U.S.C. § 1252.

Section 1252(g) provides for "Judicial review of orders of removal."  8 U.S.C. § 1252.  With some exceptions, "no court shall have jurisdiction to hear any cause of action or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(g).  This section "applies only to three discrete actions that the [Secretary] may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'"  *Reno v. American-Arab Anti-Discriminatory Comm.*, 525 U.S. 471, 482, 119 S. Ct. 936, 142 L. Ed. 2d 940 (1999) ("*AADC*") (emphasis in original).  Section 1252(g) must be narrowly construed

and "applied only to three discrete actions . . . 'to *commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Wong v. U.S. Imm. & Natur. Serv.*, 373 F.3d 952, 963–64 (9th Cir. 2004) (emphasis in original).

The Ninth Circuit has stated that section 1252(g) strips the courts of jurisdiction to review the ultimate and discretionary agency decision that an individual is not entitled to deferred action. "[C]hallenges to individual 'no deferred action' decisions . . . fall exactly within Section 1252(g)['s]" jurisdiction bar. *Regents of the Univ. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 504 (9th Cir. 2018) (differentiating individual decisions from programmatic ones), *rev'd in part, vacated in part sub nom. U.S. Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 207 L. Ed. 2d 353 (2020); *see also AADC*, 525 U.S. at 485; *Rodriguez v. Sessions*, No. 15-72487, 677 Fed. App'x 447, 2017 U.S. App. LEXIS 3216, at *2, 2017 WL 695192, at *1 (9th Cir. Feb. 22, 2017) (federal courts "lack jurisdiction to consider [a plaintiff's] eligibility for Deferred Action for Childhood Arrivals"); *Fabian-Lopez v. Holder*, 540 F. App'x 760, 761 n.2 (9th Cir. 2013).

The Court's jurisdiction to consider the narrower claims stated by Plaintiff here—whether Defendants complied with their own non-discretionary procedures and policies and the United States Constitution in their review of Plaintiff's application for DACA renewal—remains untouched by the plain text of section 1252(g) and by multiple courts interpreting it. 8 U.S.C. § 1252(g); *Vidal v. Dep't of Homeland Sec.*, 536 F. Supp. 3d 604, 618–19 (C.D. Cal. 2021) (jurisdiction over claims raising "outrageous unconstitutional conduct" despite that plaintiff had "no due process right to a grant of DACA"); *Coyotl v. Kelly*, 261 F. Supp. 3d 1328, 1339–40 (N.D. Ga. 2017) (finding jurisdiction to review whether federal agency "complied with their own procedures to (1) adjudicate Plaintiff's DACA renewal application, and (2) terminate Plaintiff's DACA status"); *Garcia Herrera v. McAleenan*, 379 F. Supp. 3d 1143, 1149 (E.D. Wash. 2019); *see also Gondal v. Dep't of Homeland Sec.*, 343 F. Supp. 3d 83, 90–92 (E.D.N.Y. 2018) ("8 U.S.C. § 1252(g) does not deprive this Court of jurisdiction to hear and adjudicate

1 procedural due process claims challenging USCIS procedure prior to its discretionary
2 decision."); *Torres v. U.S. Dep't of Homeland Sec.*, No. 3:17CV1840-JM, 2017 U.S.
3 Dist. LEXIS 161406, at *12–14, 2017 WL 4340385, at *4 (S.D. Cal. Sept. 29, 2017).

Plaintiff does not ask that the Court order his deferred action granted.  Rather, Plaintiff prays that the Court order his application reopened and order Defendants to adjudicate the application again in compliance with the law and applicable policies and procedures.  Plaintiff also seeks an order restoring his deferred status pending "Defendants' re-adjudication of his application taking into consideration the relevant factors under the DACA program rules and following their own procedures for adjudicating DACA requests." (*Compl.* at 31–32.)  Plaintiff complains Defendants considered and relied upon insufficient or unsubstantiated evidence in reviewing his renewal request.  (*Id.* at 29–30.)  Plaintiff's more limited challenge to the non-discretionary processing of his request is subject to federal judicial review even in light of 8 U.S.C. § 1252(g).

Similarly, the APA does not deprive the Court of jurisdiction over Plaintiff's challenge to the non-discretionary process by which Defendants reached their discretionary final decision.  The APA "establishes a basic presumption of judicial review [for] one suffering legal wrong because of agency action.  That presumption can be rebutted by a showing that the relevant statute precludes review or that the agency action is committed to agency discretion by law." *Regents of Univ. of Cal.*, 140 S. Ct. at 1905 (internal quotation marks and citations omitted).  As stated above, Plaintiff's Complaint seeks an order that his renewal application be reopened and adjudicated again in compliance with applicable law, policies, and procedures.  (*See Compl.* at 31–32.)  As determined above regarding to § 1252, the Court also concludes that jurisdiction exists over Plaintiff's more narrow challenges to non-discretionary agency conduct under the APA.

To the extent that Plaintiff's Complaint states a challenge to Defendants' final denial of his request for renewal, the Court lacks subject matter jurisdiction.  *See* 8 U.S.C.

§ 1252(g); 5 U.S.C. § 701(a).  However, Plaintiff alleges a violation of law in Defendants' performance of their non-discretionary procedural obligations to review his application for renewal of deferred action status.  The Court has jurisdiction to hear Plaintiff's claims to that extent.

### III. FAILURE TO STATE A CLAIM FOR RELIEF

Defendants also challenge Plaintiff's Complaint on the grounds that neither his APA cause of action nor his Due Process cause of action states a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Federal Rule of Civil Procedure 12(b)(6) allows a defendant to file a motion to dismiss for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency.  *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F. 2d 578, 581 (9th Cir. 1983).  A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Balisteri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the motion, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. Cnty.*, 487 F. 3d 1246, 1249 (9th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).  The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Sprewell v. Golden State*

*Warriors*, 266 F. 3d 979, 988 (9th Cir. 2001).  The Court addresses the sufficiency of each claim in turn.

### A.    Plaintiff's APA Claim Fails to State a Claim for Relief

Under the Administrative Procedure Act, a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review."  5 U.S.C. § 702.  A court may compel agency action unlawfully withheld and shall also overturn an agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(1) and (2)(A).  "A court can compel agency action under this section only if there is a 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action."  *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63–64, 124 S. Ct. 2373, 159 L. Ed. 2d 137 (2004)).  "The agency action must be pursuant to a legal obligation 'so clearly set forth that it could traditionally have been enforced through a writ of mandamus.'"  *Id.* at 1075–76 (quoting *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 932 (9th Cir. 2010)).

The Complaint does not allege which "specific, unequivocal command" Defendants failed to take or comply with in their review of Plaintiff's deferred action request.  *See Norton*, 542 U.S. at 63–64.  Plaintiff argued in his opposition that DHS "capriciously and arbitrarily denied his DACA renewal on a basis that is inconsistent with his prior applications," made "no finding of any disqualifying factor," and relied upon an insufficient justification under its own procedures for evaluation of eligibility.  (*See* Doc. 5 at 19.)  But the Complaint is silent in identifying which law, policy, or procedure Defendants allegedly violated in their review of Plaintiff's request.  For this reason, Plaintiff's Complaint fails to state an APA claim for relief under Rule 12(b)(6).  The Court's conclusion does not require that, in order to state a claim for relief, Plaintiff

must allege an APA violation by reference to specific chapter and verse of Defendants' own procedures.  However, the allegations must tie the Defendants' alleged wrongful conduct to a violation of law, policy, or procedure with sufficient clarity for the Court or Defendants to understand which non-discretionary duty the alleged conduct violated.

Federal Rule of Civil Procedure 15(a) states that a "court should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  A court has discretion to deny leave to amend when amendment would be futile.  *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725–26 (9th Cir. 2000).  Leave to amend should not be granted where "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *New v. Armour Pharm. Co.*, 67 F.3d 716, 722 (9th Cir. 1995). With respect to Plaintiff's APA claim, permitting amendment to add new or modified factual allegations would not be futile because it is not clear that "no set of facts can be proved under the amendment . . . that would constitute a valid and sufficient claim." *See Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).  The deficiency in the Complaint, with respect to the APA cause of action, is the absence of an identified, non-discretionary duty that Defendants allegedly violated.  It is conceivable that with amendment Plaintiff may be able to cure the deficiency and tie the alleged wrongdoing to a non-discretionary agency duty without contradicting this Complaint. *See Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 297 (9th Cir. 1990) (amended complaint may not contradict prior pleadings).

### B.    Plaintiff's Due Process Claim Fails to State a Claim for Relief

With respect to Plaintiff's Due Process claim, the Complaint alleged that Defendants violated his rights under the Fifth Amendment to the United States Constitution.  "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976).  The protected interest alleged here is Plaintiff's interest in the

government benefits that are afforded by deferred action status, specifically deferred action from deportation, eligibility to apply for work authorization, and access to other "much needed benefits." (*Compl.* at 7, 11, 14, 31; *see also, e.g.*, 8 C.F.R. § 274a.12(c)(14) (employment authorization).) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (no entitlement to re-employment after employment term completed). "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock, Colo. v. Gonzalez*, 545 U.S. 748, 756 (2005) (no entitlement to property interest in state restraining order).

Even as alleged by Plaintiff, the government benefits applicable in this case become available only to those who are granted deferred action. (*See Compl.* at 14–16 ("applicants who are approved [for deferred action] may obtain work authorization, and if such authorization is granted, a Social Security Number").) The DACA program makes aliens who are granted deferred action eligible "for work authorization and various federal benefits." *Regents of Univ. of Cal.*, 140 S. Ct. at 1901; 8 C.F.R. § 236.21(c)(1)–(4). The final decision to grant deferred action is a wholly discretionary agency decision. *See* 8 C.F.R. § 236.22 ("[D]eferred action . . . may be granted only if USCIS determines in its sole discretion that the requester meets" the enumerated criteria). The government benefits that are the subject of Plaintiff's second cause of action are not a protected entitlement within the meaning of the Due Process Clause of the Fifth Amendment because they are available only to those granted deferred action by discretionary agency decision. *See Town of Castle Rock*, 545 U.S. at 756. For this reason, Plaintiff's Compliant does not allege any entitlement that is protected. Therefore, Plaintiff's Due Process cause fails to state a claim upon which relief may be granted. In this case, amendment of Plaintiff's Due Process Clause claim would be futile because no allegation of additional or modified facts, that is also consistent with this pleading, could constitute

a valid claim for a protected interest. *See New*, 67 F.3d at 722. For this reason, Plaintiff's second cause of action for Due Process claim is dismissed with prejudice.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES the Government's motion to dismiss the Complaint for lack of subject matter jurisdiction, GRANTS the motion to dismiss Plaintiff's Second Cause of Action with prejudice, and GRANTS the motion to dismiss Plaintiff's First Cause of Action without prejudice. The Court GRANTS Plaintiff leave to file an amended complaint. Plaintiff may file an amended complaint **on or before January 15, 2024**.

Dated:  November 27, 2023

_____
Hon. Thomas J. Whelan
United States District Judge